# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN KANGETHE,<br>    Plaintiff<br><br>    v.<br><br>THE DISTRICT OF COLUMBIA,<br>    Defendant | Civil Action No. 18-64 (CKK) |

## MEMORANDUM OPINION AND ORDER
(January 18, 2019)

*Pro se* Plaintiff John Kangethe, an employee of the District of Columbia Department of Employment Services ("DOES"), brings retaliation, hostile work environment, and negligent hiring and retention claims against his employer. Plaintiff alleges that he has faced numerous adverse actions in his employment stemming from formal and informal complaints that he made regarding his supervisor, Saikou Diallo. Plaintiff contends that these adverse actions have resulted in a hostile working environment. He further alleges that it was negligent of DOES to hire Mr. Diallo and to retain him in a supervisory position. Plaintiff brings this lawsuit against the District of Columbia under the Age Discrimination in Employment Act ("ADEA"), the District of Columbia Human Rights Act ("DCHRA"), and Title VII of the Civil Rights Act ("Title VII").

Before the Court is Defendant District of Columbia's [6] Motion to Dismiss. Defendant argues that the Court should dismiss Plaintiff's entire Complaint. First, Defendant claims that Plaintiff's retaliation claims should be dismissed because they fail to state a claim on which relief can be granted. Second, Defendant contends that Plaintiff did not allege a protected class for his hostile work environment claims, that his hostile work environment claims are unexhausted, and that his allegations of a hostile work environment are not sufficiently pervasive to warrant relief. Third, Defendant argues that Plaintiff's common-law negligent hiring and retention claim is

preempted by the District of Columbia Comprehensive Merit Personnel Act of 1978 ("CMPA") and that Plaintiff's allegations fall short of the standard for negligent hiring and retention claims.

Upon consideration of the pleadings[1], the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion. The Court finds that three of the six allegedly retaliatory acts in Plaintiff's Complaint do not constitute "adverse actions" for which relief may be granted. Accordingly, Defendant's Motion is GRANTED and Plaintiff's retaliation claims are DISMISSED to the extent that they are premised on these three insufficient actions. The Court further concludes that Plaintiff failed to exhaust his hostile work environment claims and GRANTS Defendant's motion DISMISSING those claims. Finally, the Court GRANTS Defendant's motion DISMISSING Plaintiff's negligent hiring and retention claim as that claim is preempted by the CMPA. Defendant's Motion is DENIED in all other respects.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in the United States*, 758 F.3d 296, 315 (D.C. Cir. 2014). Further, because Plaintiff proceeds in this matter *pro se*, the Court must consider not only the facts

---

[1] The Court's consideration has focused on the following documents:
- Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 6;
- Pl.'s Mot. in Opp'n to Def.'s Mot. to Dismiss Pl.'s Compl. ("Pl.'s Opp'n"), ECF No. 9; and
- Def.'s Reply in Support of its Mot. to Dismiss Pl.'s Compl. ("Def.'s Reply"), ECF No. 10.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

alleged in Plaintiff's Complaint, but also the facts alleged in Plaintiff's opposition to Defendant's motion to dismiss. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("[A] district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss."); *Fillmore v. AT & T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 2 (D.D.C. 2015) ("The Court, as it must in a case brought by a *pro se* plaintiff, considers the facts as alleged in both the Complaint and Plaintiff's Opposition to Defendant's Motion to Dismiss.").

As Plaintiff is *pro se*, his Complaint is at times difficult to understand and contains extraneous information. The Court has attempted to summarize the facts relating to Plaintiff's claims and recites only the background necessary for the Court's resolution of the pending Motion to Dismiss.

Plaintiff John Kangethe was hired in 2002 as a Labor Economist for DOES and has been employed there ever since. Compl., ECF No. 1, ¶ 12. In September 2014, Saikou Diallo was promoted to supervise Plaintiff. Plaintiff had also applied for this supervisory position. *Id*. at ¶ 23. Shortly after Mr. Diallo's promotion, Plaintiff filed a discrimination claim, alleging that in promoting Mr. Diallo rather than Plaintiff, DOES had discriminated against Plaintiff on the basis of age. *Id.* at ¶ 26.

During discovery in his age discrimination lawsuit, Plaintiff alleges that records revealed that Mr. Diallo had been promoted and given a raise despite the fact that Mr. Diallo had deceived DOES by falsely claiming that he had completed his PhD in economics. *Id.* at ¶¶ 30-40. The records also revealed that DOES had initially hired Mr. Diallo at a salary almost $10,000 higher than that of Plaintiff. *Id.* at ¶¶ 61-68. Based on the information obtained in discovery, in April 2017 Plaintiff began reporting Mr. Diallo's alleged misrepresentations both formally to the

Office of the Inspector General and the Office of Risk Management and informally to officials at DOES. *Id.* at ¶¶ 41-45.

Plaintiff alleges that Mr. Diallo retaliated against him for his complaints by sending him emails containing "offensive and disparaging language." *Id.* at ¶¶ 170-73. Plaintiff also alleges that he was stripped of his essential duties, namely producing the 2016 Annual Economic Report. *Id.* at ¶¶ 87-96. Plaintiff further claims that Mr. Diallo instructed him to remove from the DOES website certain documents that Plaintiff had produced, requiring Plaintiff to receive Mr. Diallo's pre-approval before posting documents. *Id.* at ¶¶ 97-101.

Additionally, in lieu of producing his usual reports, Plaintiff alleges that Mr. Diallo gave him an excessive and unreasonable workload. *Id.* at ¶¶ 69-86. Specifically, Plaintiff claims that Mr. Diallo asked him to complete three economic reports in an unreasonable time-frame and to complete a minimum wage study which Plaintiff contends an outside contractor was already assigned to complete. *Id.* at ¶¶ 73-83, 102-14. Plaintiff also alleges that Mr. Diallo asked him to complete a cost-benefit analysis on training programs and services at DOES. *Id.* at ¶¶ 121-33. Plaintiff argues that, over his objections regarding time and experience limitations, his work on these projects was included on his FY2017 performance plan and evaluation. *Id.* at ¶¶ 137-49. Plaintiff claims that Mr. Diallo added these responsibilities to his FY2017 performance plan in order to issue him a "marginal performer" rating on his evaluation. *Id.* at ¶¶ 150-55.

In his performance evaluation meeting, Plaintiff alleges that Mr. Diallo "complain[ed] about the lawsuits which Plaintiff had filed against DOES." *Id.* at ¶ 157. Plaintiff further alleges that Mr. Diallo said that Plaintiff's lawsuits against DOES should not prevent him from performing his duties. *Id.* At the end of the meeting, Plaintiff contends that Mr. Diallo refused to revise the evaluation and that the evaluation was finalized by DOES. *Id.* at ¶¶ 158-60. Plaintiff

submitted a request for an appeal of his performance evaluation with the DOES Human Resources Department but contends that the appeal has not occurred. *Id.* at ¶¶ 161-62.

Plaintiff also complains that DOES continued to promote and praise Mr. Diallo despite his misrepresentations about his academic credentials and his allegedly discriminatory and retaliatory treatment of Plaintiff. Plaintiff specifically alleges one staff meeting in December 2017 where DOES officials recognized Mr. Diallo for outstanding service to DOES. Soon thereafter, Mr. Diallo was raised in the organizational chart while Plaintiff was reassigned to be under the supervision of a younger, newly-promoted employee. *Id.* at ¶¶ 182-85.

Based on these alleged facts, Plaintiff contends that Defendant violated federal and District of Columbia law by retaliating against him for engaging in legally-protected conduct, by creating a hostile work environment, and by negligently hiring and retaining Mr. Diallo.

## II. LEGAL STANDARD

Defendant moves to dismiss Plaintiff's Complaint under Rule 12(b)(6). According to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

# III. DISCUSSION

Defendant moves to dismiss each of Plaintiff's three claims: retaliation, hostile work environment, and negligent hiring and retention. The Court will address each of Defendant's arguments in turn.

## 1. Retaliation Claims

In order to state a claim of retaliation under Title VII or the DCHRA, the plaintiff must allege a protected activity, a materially adverse action, and a causal link between the two. *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) (discussing Title VII); *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 235 n.3 (D.C. Cir. 1999) (discussing DCHRA). These statutes protect from retaliation those who have participated in filing a discrimination action and those who have opposed employment practices reasonably believed to be discriminatory. *See* 29 U.S.C. § 623(d); *see also* D.C. Code § 2-1402.61. The plaintiff must allege that he engaged in one of these types of protected activity and that he experienced a materially adverse action because he engaged in that activity.

An adverse action is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). An employee must "experience[ ] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *see also Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (distinguishing between "purely subjective injuries" which are not actionable, and "objectively tangible harm," which is

actionable). Therefore, "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001). For the purposes of retaliation claims in particular, an employment action must be "materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotation marks omitted)).

Plaintiff contends that the following actions constitute "materially adverse actions" causally connected to a protected activity: (1) Plaintiff was paid less than Mr. Diallo; (2) Plaintiff was stripped of essential job-related duties; (3) Plaintiff was assigned an inequitable distribution of work with unrealistic deadlines; (4) Plaintiff was issued a negative performance evaluation predicated on the disproportionate workload; (5) Plaintiff was denied due process to appeal the negative performance evaluation; and (6) Plaintiff was constructively demoted. Pl.'s Opp'n, ECF No. 9, 7. Defendant argues that none of these incidents are actionable adverse actions causally connected to a protected activity.

The Court agrees in part and GRANTS Defendant's motion to dismiss as to Plaintiff's claims for (1) being paid less than Mr. Diallo, (2) being denied due process to appeal his performance evaluation, and (3) being constructively demoted. The Court otherwise DENIES Defendant's motion to dismiss Plaintiff's retaliation claims.

### A. Being paid less than Mr. Diallo

Plaintiff argues that in April 2014, Defendant hired Mr. Diallo at a starting salary of $82,357, which was $10,000 higher than what Plaintiff was making at the time. Compl., ECF

No. 1, ¶ 64. Plaintiff contends that Mr. Diallo was given this higher salary based on "his material misrepresentations of academic credentials." *Id.*

As an initial matter, Defendant argues that this claim is untimely because it occurred outside the limitations period for Title VII and the DCHRA. Plaintiff counters that the claim is timely because he only learned about the claim in March 2017 through the discovery process for his age discrimination lawsuit. Pl.'s Opp'n, ECF No. 9, 9.

Even if the Court assumes that this claim is timely, being paid less than Mr. Diallo is not a materially adverse action causally connected to a protected activity. Throughout his Complaint and his opposition to Defendant's motion, Plaintiff repeatedly states that Mr. Diallo was paid this higher salary "based on his material misrepresentations of his academic credentials." *Id.* at 9, *see also* Compl., ECF No. 1, ¶ 64. The fact that Mr. Diallo may have misrepresented his credentials to obtain a higher salary fails to establish that Plaintiff was retaliated against.

Plaintiff does make the conclusory allegation that Mr. Diallo was paid more than Plaintiff due to Plaintiff's "prior EEOC activities filed in January 2010, and an on-going discrimination case arising from those EEOC activities." Pl.'s Opp'n, ECF No. 9, 6. Plaintiff also contends that Mr. Diallo and the decision-makers at DOES "were all younger than Plaintiff," which "provides proof of intentional retaliatory wage discrimination against Plaintiff on account of age." Compl., ECF No. 1, ¶ 67.

But, Plaintiff's claim is premised on the fact that Mr. Diallo received a higher salary than Plaintiff because Mr. Diallo misrepresented his credentials. Plaintiff never alleges that he himself was paid less than he otherwise should have been paid based on his own government pay-grade level. That Mr. Diallo was paid a higher salary due to his allegedly misrepresented credentials

fails to establish that Plaintiff was paid a lower salary due to his participation in protected activities.

Accordingly, the Court finds that Plaintiff has failed to state a claim of retaliation based on being paid less than Mr. Diallo. The Court DISMISSES this retaliation claim.

**B. Removal of job-related duties**

Plaintiff argues that he was stripped of his essential job-related duties in retaliation for engaging in protected activity. Compl., ECF No. 1, ¶¶ 87-96. Specifically, Plaintiff contends that he was discharged from producing the 2016 Annual Economic Report despite having produced the report in the past. *Id.*

Defendant contends that being discharged from producing the 2016 Annual Economic Report is not an adverse action because Plaintiff does not allege that his new assignments were inferior to his old assignments. Instead, according to Defendant, Plaintiff alleges only that he had previously been responsible for certain reports but that Mr. Diallo required him to complete other reports instead.

At the motion to dismiss stage, the Court is not prepared to find the reassignment of Plaintiff's duties was not an adverse action. "Whether a particular reassignment of duties constitutes an adverse action for purposes of Title VII is generally a jury question. The court may not take that question away from the jury if a reasonable juror could find that the reassignment left the plaintiff with significantly diminished responsibilities." *Czekalski v. Peters*, 475 F.3d 360, 365 (D.C. Cir. 2007) (internal citation omitted). On this record, it is not yet clear whether or not Plaintiff will be able to establish that his reassignment of duties resulted in significantly diminished responsibilities. Accordingly, dismissal of this claim is inappropriate at this time.

Moreover, the Court finds that Plaintiff has alleged at least a plausible causal connection

between engaging in protected activity and his reassignment of duties. On April 4, 2017, Plaintiff

alleges that he engaged in statutorily protected activity by complaining of retaliatory harassment

to the DOES General Counsel. Compl., ECF No. 1, ¶¶ 73-84. The next day, Plaintiff alleges that

he was removed from the 2016 Annual Economic Report. *Id.* at ¶ 87. The Court finds that the

proximity in time between the alleged protected activity and the alleged adverse action

establishes a causal connection sufficient to overcome Defendant's motion to dismiss at this

time. *See Holcomb*, 433 F.3d at 903 (explaining that a causal connection may be found when the

employer had knowledge of the protected activity and the adverse action took place shortly after

the activity).

Accordingly, Defendant's motion is DENIED WITHOUT PREJUDICE as to Plaintiff's

claim for retaliation based on a withdrawal of job-related duties.

### C.  Heavy workload with unrealistic deadlines

Plaintiff next argues that he was given an increased workload with unrealistic deadlines

in retaliation for engaging in protected activity. Specifically, Plaintiff alleges that he was asked to

conduct a cost-benefit analysis on training programs and services at DOES which was not part of

his job responsibilities. Compl., ECF No. 1, ¶¶ 119-20. Additionally, Plaintiff alleges that he was

required to complete an unnecessary minimum wage study. *Id.* at ¶ 113. Plaintiff contends that

Mr. Diallo further altered Plaintiff's required deliverables to create additional work for Plaintiff

by requiring him to produce short-term and long-term industry and occupational projections. *Id.*

at ¶ 130. Plaintiff contends that "[c]onsidering the heavy workload plaintiff was carrying at the

time, it was objectively unreasonable for [DOES] to require Plaintiff to do any additional

research." *Id.* at ¶ 123.

An excessive workload with unrealistic deadlines can constitute a materially adverse action. *See Mogenhan v. Napolitano*, 613 F.3d 1162, 1166-67 (D.C. Cir. 2010) (finding that the defendant was not entitled to summary judgment where the plaintiff alleged that her workload had increased to five to six times that of other employees). The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has explained that "[a] reasonable employee might well be dissuaded from filing an EEO complaint if []he thought [his] employer would retaliate by burying [him] in work." *Id.*; *see also Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007) (explaining that "increas[ing an employee's] workload and tighten[ing] her deadlines in retaliation for her seeking a reasonable accommodation ... might suffice to defeat summary judgment on a retaliation claim").

But, Defendant argues that Plaintiff has not alleged that his workload was objectively unreasonable. For instance, Plaintiff never alleged that he was given more work than other employees at DOES. Rather, Defendant contends that Plaintiff alleged only that he was given an amount of work which he found to be subjectively unreasonable. According to Defendant, Plaintiff's allegations are insufficient to establish a materially adverse action.

However, on the limited record at this stage, the Court cannot say whether or not Plaintiff's additional assignments constituted an objectively unreasonable workload which would dissuade a reasonable worker from making or supporting a charge of discrimination. Plaintiff has alleged that he was assigned specific, additional assignments which equated to an excessive workload in retaliation for his protected activities, such as filing discrimination claims against Mr. Diallo and DOES. *See, e.g.,* Compl., ECF No. 1, ¶¶ 115, 148. Without further development of the factual record, the Court cannot say whether or not assigning Plaintiff these additional

responsibilities resulted in the type and magnitude of harm sufficient to constitute an adverse action.

Accordingly, Defendant's motion is DENIED WITHOUT PREJUDICE as to Plaintiff's claim of retaliation based on an excessive workload.

### D. Negative performance evaluation

In his fourth claim for retaliation, Plaintiff argues that he was retaliated against for engaging in protected activity based on his FY2017 performance evaluation. Plaintiff alleges that his FY2017 performance evaluation was conducted in an arbitrary and capricious manner. Compl., ECF No. 1, ¶ 151. In his performance evaluation, Plaintiff was rated a "marginal performer." *Id.* at ¶ 150. Plaintiff contends that the evaluation was based on "bogus claim[s]" and that it included disparaging remarks. *Id.* at ¶¶ 154-55. Plaintiff further alleges that the evaluation is internally inconsistent, suggesting an ulterior motive not related to Plaintiff's actual work performance. *Id.* at ¶ 152.

Defendant acknowledges that a poor performance review can be an actionable adverse action. Def.'s Mot., ECF No. 6, 15. But, Defendant argues that Plaintiff has failed to properly allege that his negative performance evaluation was a materially adverse action because Plaintiff did not connect the evaluation to his salary or promotion potential. *See Patzy v. Hochberg*, 266 F. Supp. 3d 221, 224 (D.D.C. 2017) ("[T]o be considered materially adverse, a poor performance evaluation generally must affect an employee's position, grade level salary, or promotional opportunities." (internal quotations omitted)). Because Plaintiff failed to connect his poor performance evaluation to his salary or promotional potential, Defendant asks the Court to dismiss this claim.

On this record, it is unclear whether or not Plaintiff's negative performance review is linked to his salary or promotional potential. However, the Court notes that Plaintiff alleges that "[t]he report included disparaging remarks suggesting Plaintiff's character is severely flawed and included demeaning terms like irresponsible, lack of inaptitude [sic], lack of flexibility and adaptability, lack of initiative, carelessness, and general negligence." Compl., ECF No. 1, ¶ 155. Character allegations such as general negligence could lead to more tangible forms of adverse action such as ineligibility for promotion. Absent future development of the factual record, the Court cannot say that Plaintiff's negative performance evaluation did not have tangible employment effects.

Moreover, the Court notes that Plaintiff has causally connected his negative performance evaluation to a protected activity. Plaintiff alleges that during his FY2017 performance evaluation meeting, Mr. Diallo complained about the lawsuits that Plaintiff had filed against DOES in the past. Compl., ECF No. 1, ¶ 157. At the motion to dismiss stage, this allegation is sufficient to causally connect the negative performance evaluation to Plaintiff's protected activity.

Accordingly, Defendant's motion is DENIED WITHOUT PREJUDICE as to this claim of retaliation based on Plaintiff's negative performance review.

### E. Delay in appeal of negative performance evaluation

Fifth, Plaintiff alleges that he faced an adverse action due to his protected activity when DOES failed to move forward on the appeal of his negative performance evaluation. Plaintiff alleges that in November 2017 he submitted a "Request for Review of John Kangethe FY2017 Performance Evaluation" to DOES Human Resources Department. *Id.* at ¶ 161. Plaintiff contends that, as of this date, he has not had a hearing for the appeal of his negative performance

evaluation. *Id.* at ¶ 162. Plaintiff argues that the failure to process his appeal is in violation of due process guaranteed to him by the DC Personnel Manual. Pl.'s Opp'n, ECF No. 9, 13-14.

The Court concludes that Plaintiff has not alleged a materially adverse action. In his opposition to Defendant's motion, Plaintiff explains that DOES has not denied the appeal of his negative performance evaluation. *Id.* at 14. Instead, in December 2017 DOES indicated that it was putting together a committee panel for the appeal, and, since then, Plaintiff has "yet to get the requested review." *Id.* That the appeal process is taking longer than Plaintiff would like is not the type of act which "might well deter a reasonable employee from complaining about discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69. Instead, this delay is the sort of "minor annoyance[]" which is an expected part of working life. *Id.*

Because Plaintiff's claim that DOES has delayed the appeal of his negative performance evaluation is not a materially adverse action, the Court concludes that Plaintiff has failed to state a claim of retaliation on this ground. Accordingly, this claim is DISMISSED.

### F. Constructive demotion

Finally, Plaintiff claims that he was "constructively demoted" because of his complaints about Mr. Diallo's retaliatory discrimination and harassment. Pl.'s Opp'n, ECF No. 9, 14. Specifically, Plaintiff alleges that at a December 2017 DOES staff meeting, a DOES official recognized Mr. Diallo for outstanding service. Compl., ECF No. 1, ¶ 183. Plaintiff further alleges that the DOES official shortly thereafter distributed a new organizational chart showing that Mr. Diallo had been assigned to supervise two additional managers. Meanwhile, Plaintiff had been reassigned to a younger, newly-appointed supervisor. *Id.* at 184.

In order to constitute constructive demotion, the change to a plaintiff's employment must entail a material change in the plaintiff's title, duties, salary, benefits, or working hours. *See*

*Medina v. Henderson*, No. 98-5471, 1999 WL 325497, at *1 (D.C. Cir. April 30, 1999) (per curiam); *see also Tressler v. Nat'l R.R. Passenger Corp.*, 819 F. Supp. 2d 1, 5 (D.D.C. 2011) (finding constructive demotion where plaintiff took a different position for lower pay). Here, Plaintiff does not allege actions sufficiently material to constitute constructive demotion.

The fact that Mr. Diallo was praised and was given additional supervisory duties is not a demotion, constructive or otherwise, of Plaintiff. DOES's positive treatment of Mr. Diallo has no impact on Plaintiff's claims of adverse treatment. Moreover, Plaintiff's allegation that he was given a newer, younger supervisor does not constitute constructive demotion. Plaintiff was not entitled to the supervisor of his choice. *See Forkkio v. Powell*, 306 F.3d 1127, 1132 (D.C. Cir. 2002) (explaining that the plaintiff was not objectively harmed by being assigned a supervisor not of the plaintiff's choice). And, Plaintiff does not allege that the assignment of a new supervisor had any adverse impact on plaintiff's title, duties, salary, benefits, or working conditions.

Accordingly, the Court concludes that Plaintiff has not stated a claim for retaliation based on constructive demotion. This claim is DISMISSED.

### G. Summary of Plaintiff's remaining retaliation claims

Based on the above analysis, the Court has GRANTED Defendant's motion and DISMISSED Plaintiff's retaliation claims for (1) being paid less than Mr. Diallo, (2) the delay in Plaintiff's appeal of his negative performance evaluation, and (3) constructive demotion. However, the Court has DENIED WITHOUT PREJUDICE Defendant's motion to dismiss Plaintiff's retaliation claims for (1) being stripped of his job-related duties, (2) being assigned an excessive workload, and (3) Plaintiff's negative FY2017 performance evaluation. Plaintiff may proceed with these three retaliation claims.

### 2. Hostile Work Environment Claims

In addition to his retaliation claims, Plaintiff also brings hostile work environment claims under Title VII and the DCHRA. To state a claim for a hostile work environment, a plaintiff must allege that the conditions of his workplace were "so objectively offensive as to alter the conditions of the victim's employment." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998) (internal quotation marks omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* (internal quotation marks omitted). Accordingly, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted).

Defendant presents three arguments for why the Court should dismiss Plaintiff's hostile work environment claims. First, Defendant argues that Plaintiff's Complaint did not identify the protected status that he believes to have been the target of the allegedly hostile work environment. It is true that Plaintiff's Complaint does not identify a protected status for purposes of his hostile work environment claims. But, in his opposition to Defendant's motion, Plaintiff clarifies that "he was subjected to an objectively hostile work environment because of his age." Pl.'s Opp'n, ECF No. 9, 17. Because Plaintiff proceeds *pro se*, the Court must consider allegations not only in Plaintiff's Complaint, but also in his opposition to Defendant's motion. *See Brown*, 789 F.3d at 152 (explaining that a court errs if it does not consider allegations in all of a *pro se* plaintiff's pleadings). Accordingly, the Court finds that Plaintiff alleged a protected class of age and will not dismiss on this ground.

Second, Defendant argues that the Court should dismiss Plaintiff's hostile work environment claims because Plaintiff failed to exhaust the claims. Title VII requires that a person complaining of a hostile work environment file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") and allow the agency time to act on the charge. 42 U.S.C. § 2000e-5(f)(1*); see also Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). A lawsuit following the EEOC charge is "limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park*, 71 F.3d at 907 (internal quotations marks omitted). At a minimum, any claims in a plaintiff's complaint "must arise from the administrative investigation that can be reasonably expected to follow the charge of discrimination." *Id.* (internal quotation marks omitted).

Though Plaintiff did not attach his EEOC charge to his Complaint, the Court can consider Plaintiff's EEOC charge because Plaintiff's Complaint refers to his EEOC charge. Compl., ECF No. 1, ¶¶ 7-8. Accordingly, the Court considers the charge incorporated by reference. *See Kruger v. Cogent Commc'ns, Inc.*, 174 F. Supp. 3d 75, 85 (D.D.C. 2016) (considering the plaintiff's EEOC charge incorporated by reference). Moreover, the Court can take judicial notice of Plaintiff's EEOC charge as it is a public document. *Id.* (explaining that the court could take judicial notice of the plaintiff's EEOC charge).

Here, Plaintiff's EEOC charge states:

I am employed by above-named Respondent since on or about January 2002. My job classification is Laborer Economist. I believe I have been retaliated against due to my prior charge. On or about April 5, 2017, my job duties were removed from [sic] my Supervisor, Saikou Diallo as an act of retaliation against me. I believe I was discriminated and retaliated against for engaging in protected activity, in violation of the Title VII of the Civil Rights Act of 1964 and Age Discrimination Employment Act of 1967 as amended.

Def.'s Mot., ECF No. 6-3, Ex. 1. Based on the plain terms of Plaintiff's EEOC charge, Plaintiff did not make a hostile work environment claim. Instead, Plaintiff alleged only retaliation and discrimination. Accordingly, if Plaintiff's hostile work environment claim is not "like or reasonably related to the allegations of the charge," Plaintiff did not exhaust his hostile work environment claim. *See Park*, 71 F.3d at 907 (internal quotations marks omitted).

In determining whether or not Plaintiff's hostile work environment claim is like or reasonably related to the allegations in Plaintiff's EEOC charge, the Court considers the D.C. Circuit's decision in *Park v. Howard University*, 71 F.3d 904 (D.C. Cir. 1995). In that case, the Plaintiff had filed a EEOC charge alleging, in part, that she was discriminated against on the basis of her Korean national origin when she was passed over for a promotion in favor of an American. The D.C. Circuit concluded that "[t]he bald statement that '[i]t is my belief that I was denied the opportunity for advancement in my career because of … my national origin' cannot be read to encompass a hostile work environment claim." *Park*, 71 F.3d at 908. The Court explained that the goals of prior administrative relief would be frustrated if the filing of a general charge with the EEOC allowed a plaintiff to challenge any conduct that took place during the employment relationship. *Id.*

Relying on *Park*, courts within this Circuit have regularly found hostile work environment claims unexhausted where the plaintiff's EEOC charge alleged only a discrete act. *See, e.g., Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 185 (D.D.C. 2018 ) (finding hostile work environment claim unexhausted where plaintiff's EEOC charge alleged that she was terminated on the basis of her national origin); *Panarello v. Zinke*, 254 F. Supp. 3d 85, 102 (D.D.C. 2017) (finding hostile work environment claim unexhausted where plaintiff identified only a few discrete acts of alleged discrimination and retaliation); *Akridge v. Gallaudet*

*Univ.*, 729 F. Supp. 2d 172, 180 (D.D.C. 2010) (finding hostile work environment claim unexhausted where plaintiff's EEOC charge alleged only one act of discrimination). In order to make a claim of a hostile work environment, the plaintiff must show that the "'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Vickers v. Powell*, 493 F.3d 186, 197 (D.C. Cir. 2007) (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21, (1993)). Accordingly, if a plaintiff's EEOC charge alleges only one discrete act of discrimination or retaliation, the EEOC charge is insufficient to exhaust the plaintiff's hostile work environment claim.

Here, the Court concludes that Plaintiff's hostile work environment claim is not reasonably related to the allegations in Plaintiff's bare and perfunctory EEOC charge. Plaintiff's EEOC charge alleges only one discrete act: that DOES discriminated and retaliated against Plaintiff by having his job duties removed. Def.'s Mot., ECF No. 6-3, Ex. 1. Because "[d]iscrete acts constituting discrimination or retaliation claims ... are different in kind from a hostile work environment claim," which "must be based on severe and pervasive discriminatory intimidation or insult," Plaintiff's EEOC charge alleging only the removal of his job duties cannot reasonably be transformed into a hostile work environment claim. *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003), *aff'd*, 2004 WL 287128 (D.C. Cir. Feb. 4, 2004). If this bare charge were sufficient to open the door to Plaintiff's hostile work environment claim, the purposes behind prior administrative review would not be served. After all, "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Park*, 71 F.3d at 907. Accordingly, the Court finds that Plaintiff's hostile work environment claim is unexhausted.

Because Plaintiff failed to exhaust his hostile work environment claim, the Court GRANTS Defendant's motion and DISMISSES Plaintiff's Title VII hostile work environment claim.

Plaintiff's hostile work environment claim brought under the DCHRA is DISMISSED for similar reasons. The DCHRA does not normally require exhaustion. But, there is a statutory exhaustion requirement for employees of the District of Columbia government. D.C. Code § 2-1403.03; *see Newman v. District of Columbia*, 518 A.2d 698, 700 (D.C. 1986) ("For District of Columbia government employees only, … the Human Rights Act requires the exhaustion of the available administrative remedies."). As an employee of DOES, Plaintiff is a District of Columbia government employee required to exhaust his administrative remedies prior to bringing a claim under the DCHRA.

An employee of the District of Columbia government may exhaust his administrative remedies under the DCHRA by filing a charge with the EEOC. *Fowler v. District of Columbia*, 122 F. Supp. 2d 37, 41-44 (D.D.C. 2000). Accordingly, the Court looks to Plaintiff's EEOC charge to determine whether or not he exhausted his administrative remedies as required under the DCHRA. As was previously explained, Plaintiff's EEOC charge did not allege a hostile work environment, nor did the allegations in the EEOC charge reasonably relate to his hostile work environment claim. For the same reasons that Plaintiff's EEOC charge did not exhaust his hostile work environment claim under Title VII, the charge did not exhaust his hostile work environment claim under the DCHRA. *See Ivey v. District of Columbia*, 949 A.2d 607, 615 (D.C. 2008) (finding plaintiff's DCHRA claim exhausted because her EEOC charge "alleged all the facts necessary to make out [her] claim under the DCHRA").

Accordingly, the Court GRANTS Defendant's motion and DISMISSES Plaintiff's DCHRA hostile work environment claim.

Because the Court has already determined that Plaintiff's Title VII and DCHRA hostile work environment claims are dismissed as unexhausted, the Court need not address Defendant's final argument that Plaintiff failed to allege conduct severe or pervasive enough to constitute a hostile work environment.

### 3. Negligent Hiring/Retention Claim

Finally, Plaintiff brings a claim for the negligent hiring and retention of Mr. Diallo. In order to establish a claim of negligent hiring or retention, a plaintiff must show that "the employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge failed to adequately supervise the employee." *Blair v. District of Columbia*, 190 A.3d 212, 229 (D.C. 2018) (internal quotation marks omitted).

Plaintiff contends that, as early as April 2014, DOES officials knew that Mr. Diallo had falsified his academic and employment credentials. Compl., ECF No. 1, ¶ 194. Additionally, Plaintiff alleges that DOES officials knew of "Mr. Diallo's proclivity for retaliatory harassment against Plaintiff." *Id*. at ¶ 196. Despite this knowledge, DOES continued to retain Mr. Diallo and allowed him to supervise Plaintiff. Accordingly, Plaintiff alleges that Defendant is liable for the negligent hiring and retention of Mr. Diallo.

Defendant argues that Plaintiff's common-law tort claim for negligent hiring and retention should be dismissed as preempted by the District of Columbia Comprehensive Merit Personnel Act of 1978 ("CMPA"). *See* D.C. Code §§ 1-601.1-1-636.03. The CMPA "provides[s] District employees with their *exclusive* remedies for claims arising out of employer conduct in

handling personnel ratings, employee grievance, and adverse action." *District of Columbia v. Thompson*, 593 A.2d 621, 635 (D.C. 1991) (emphasis added). The CMPA preempts "nearly all employee claims arising out of workplace activity." *See Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000). As Plaintiff's claim arises from workplace personnel and grievance issues, the Court agrees with Defendant and concludes that the CMPA preempts Plaintiff's claim for negligent hiring and retention.

Plaintiff's claim is based on DOES's decision to hire and retain Mr. Diallo despite alleged academic misrepresentations and despite allegations of retaliation and harassment. Compl., ECF No. 1, ¶¶ 194, 196. These matters fall within the provisions for personnel actions, grievances, and adverse actions covered by the CMPA. *See* D.C. Code § 1-603.01(10) (defining "grievance' as "any matter under the control of the District government which impairs or adversely affects the interest, concern, or welfare of employees"). For example, in *District of Columbia v. Thompson*, 593 A.2d 621 (D.C. 1991), the District of Columbia Court of Appeals dismissed as preempted by the CMPA the plaintiff's claims for defamation and intentional infliction of emotional distress arising out of disputes with her supervisor about criticisms of her performance, denials of leave, and a refusal to promote. *Thompson*, 593 A.2d at 635. But, the *Thompson* Court concluded that the plaintiff's claims for assault and battery were not preempted by the CMPA because they were not personnel actions. *Id.* Accordingly, because the Court finds that Plaintiff's claim involves personnel issues, employee grievances, and adverse actions, Plaintiff's claim is preempted by the CMPA. *See Wise v. District of Columbia*, No. 03-310, 2005 WL 818622, at *5 (D.D.C. April 8, 2005) (finding plaintiff's claims for intentional infliction of emotional distress preempted by the CMPA where plaintiff alleged superiors retaliated against him for reporting illegal conduct).

Despite the CMPA, Plaintiff argues that this Court can proceed with his negligent hiring and retention claim because "Plaintiff properly presented the tort claims to the D.C. Office of risk Management … when on September 17, 2017, Plaintiff submitted an 'Advanced Notice to the District of Columbia Mayor,' through the Office of Risk Management (ORM) for tort claims of negligent hire, retention, and supervision." Pl.'s Opp'n, ECF No. 9, 21 (citing Compl., ECF No. 1, ¶ 43). But, regardless of whether or not Plaintiff provided timely notice of his claim, the CMPA's remedial scheme precludes Plaintiff from bringing a civil action in this Court for this claim. Accordingly, this Court cannot hear Plaintiff's claim.

Because the Court has found that Plaintiff's negligent hiring and retention claim is preempted by the CMPA, the Court need not address Defendant's second argument that Plaintiff's allegations fall short of the standard for common-law negligent hiring and retention claims. Based on the above analysis, the Court GRANTS Defendant's motion and DISMISSES Plaintiff's negligent hiring and retention claim.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ORDERED that Defendant's [6] Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

It is further ORDERED that Defendant's Motion is GRANTED and Plaintiff's retaliation claims are DISMISSED insofar as they rely on (1) Plaintiff being paid less than Mr. Diallo, (2) the delay in Plaintiff's appeal of his negative performance evaluation, and (3) Plaintiff's constructive demotion.

It is further ORDERED that Defendant's Motion is GRANTED and Plaintiff's hostile work environment claims are DISMISSED.

It is further ORDERED that Defendant's Motion is GRANTED and Plaintiff's negligent hiring and retention claim is DISMISSED.

It is further ORDERED that Defendant's Motion is DENIED in all other respects. Specifically, Plaintiff can proceed with retaliation claims for (1) being stripped of his job-related duties, (2) being assigned an excessive workload, and (3) being given a negative performance evaluation.

It is further ORDERED that Plaintiff shall file an Amended Complaint presenting only those claims which are permitted to proceed by no later than FEBRUARY 15, 2019. And, Defendant shall file a response to Plaintiff's Amended Complaint by no later than MARCH 15, 2019.[2]

It is further ORDERED that the clerk of the Court shall mail a copy of this Memorandum Opinion and Order to Plaintiff at his address of record.

Dated: January 18, 2019

                                                 /s/                          
                                              COLLEEN KOLLAR-KOTELLY
                                              United States District Judge

---

[2] Plaintiff's Amended Complaint should not contain his dismissed claims or the factual allegations related to those dismissed claims. Plaintiff's objections to the dismissal of his claims will still be preserved for appellate review should Plaintiff so choose.